2018 PA Super 396

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZAMIR L. NOBLES | : | |
| | : | |
| Appellant | : | No. 1095 MDA 2017 |

Appeal from the Judgment of Sentence May 22, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001731-2017

BEFORE: STABILE, J., NICHOLS, J., and PLATT, J.*

OPINION BY NICHOLS, J.:                    **FILED OCTOBER 31, 2018**

Appellant Zamir L. Nobles appeals from the judgment of sentence imposed after he entered a negotiated guilty plea to receiving stolen property, firearms not to be carried without a license, and possession of a firearm by a minor.[1] Appellant claims that the trial court erred in denying his request for credit for time spent at a juvenile detention facility under 42 Pa.C.S. § 9760(1). We remand for proceedings consistent with this opinion.

The Commonwealth summarized the following facts giving rise to Appellant's conviction at the guilty plea hearing:

> On March 9 of 2017, [Appellant] was walking north in the 300 block of Evergreen Street in the City of Harrisburg. At this point in time, Officer [Nathan W.] Ishman of the Harrisburg City Police observed [Appellant] produce a handgun and fire one round into the ground. He then observed [Appellant] discard the handgun to

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3925(a), 6110.1, and 6106(a)(1), respectively.

the west side of the street. At that point in time, the officer was able to locate a black and silver, [.]380-caliber Hi-Point, semiautomatic handgun. The firearm was loaded with one round in the chamber and four rounds in the magazine.

N.T. Guilty Plea & Sentencing Hr'g, 5/22/17, at 4-5. Appellant was seventeen years old at the time of the incident.

The trial court summarized the procedural history leading to Appellant's plea as follows:

[Appellant] was taken into custody on March 9, 2017 and following a detention hearing remained securely detained at South Mountain Juvenile Detention Center (hereinafter "South Mountain").[2] On March 15, 2017, a delinquency petition was filed

_____

[2] *See* 42 Pa.C.S. § 6321 (a)(2.1), 6324(2) (relating to the commencement of juvenile proceedings). Delinquency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375. We further note that Section 6327 provides, in part:

A child alleged to be delinquent may be detained only in:

(1) A licensed foster home or a home approved by the court.

(2) A facility operated by a licensed child welfare agency or one approved by the court.

(3) A detention home, camp, center or other facility for delinquent children which is under the direction or supervision of the court or other public authority or private agency, and is approved by the Department of Public Welfare.

(4) Any other suitable place or facility, designated or operated by the court and approved by the Department of Public Welfare.

Under no circumstances shall a child be detained in any facility with adults, or where the child is apt to be abused by other children.

42 Pa.C.S. § 6327(a).

alleging [Appellant] committed the delinquent acts of: (1) Receiving Stolen Property; (2) Firearms Not to be Carried Without a License; (3) Possession of Firearm Prohibited; (4) Possession of a Firearm by Minor; and (5) Tamper With or Fabricate Physical Evidence. At the transfer hearing on April 10, 2017, [Appellant] waived his charges to the adult criminal justice system pursuant to a negotiated plea agreement.[3] He was represented by Corey Korinda, Esquire. [That same day Appellant was transferred from South Mountain to the Dauphin County Prison.]

On May 22, 2017, [Appellant] entered a negotiated plea agreement wherein he ple[]d guilty to Count One (receiving stolen property), Count Two (firearms not to be carried [with]out a license), and Count Four (possession of firearm by a minor). The remaining charges were withdrawn by the Commonwealth.

Trial Ct. Op., 9/5/17, at 1-2 (footnotes omitted). The plea agreement called for an aggregate sentence of fifteen to thirty months' imprisonment. N.T. Guilty Plea & Sentencing Hr'g at 5.

Of relevance to this appeal, Appellant requested credit for time spent at South Mountain from March 9 to April 10, 2017. *Id.* at 7. Appellant's counsel noted that at South Mountain, Appellant's room was locked, the doors to the facility were locked, and the facility was surrounded by a fence. *Id.* at 8. Appellant's counsel further asserted that the structure of the program was "designed strictly for detention leading up to [an] adjudication or transfer hearing" and not for treatment. *Id.* at 9. According to Appellant's counsel, juveniles at the facility did not have a right to talk and socialize in the morning, but were required to earn this privilege, which would then be extended "in the

_____

[3] **See** 42 Pa.C.S. § 6355(c) (relating to a child's request for the transfer of matter from juvenile court for prosecution in a criminal proceeding).

- 3 -

evening hours for dinner." *Id.* Appellant's counsel argued that Appellant's time at South Mountain constituted "a custodial detention" for the purposes of credit for time served. *Id.*

The Commonwealth objected to Appellant's request for credit for time spent at South Mountain. The Commonwealth averred that it "only had considered the time that [Appellant] was spending at Dauphin County Prison when this plea was negotiated" and requested that the "negotiation be honored in this case." *Id.* at 10. Additionally, the Commonwealth suggested that the award of credit for time spent at South Mountain was discretionary with the trial court. *Id.* at 13.

Appellant responded that the terms of the plea agreement did not preclude him from seeking credit and that he informed the Commonwealth of his time credit request for time spent at South Mountain. *Id.* at 10. The Commonwealth agreed that the agreement did not preclude Appellant's request for credit, but noted that Appellant did not indicate his intent to seek credit until after the parties negotiated the fifteen-to-thirty month sentence. *Id.*

The trial court concluded that Appellant was not entitled to credit for the time spent at South Mountain and sentenced Appellant to the negotiated aggregate term of fifteen to thirty months' imprisonment, with credit for time served in Dauphin County prison from April 10 to May 22, 2017. The trial court recommended that Appellant be confined to the State Correctional Institution at Pine Grove, which focuses on juvenile offenders.

Appellant timely filed a post-sentence motion, which the trial court denied on June 30, 2017. Appellant timely appealed and submitted a court-ordered Pa.R.A.P. 1925(b) statement, in which he asserted that he was entitled to credit for the time he spent at South Mountain.

The trial court, in its Pa.R.A.P. 1925(a) opinion, offered two reasons for denying Appellant's request for credit for time spent at South Mountain. First, the court construed Appellant's claim as a challenge to the discretionary aspects of the sentence. *See* Trial Ct. Op. at 2. The court opined that Appellant's negotiated sentence appropriately considered Appellant's rehabilitative needs. *Id.* at 6. The court emphasized that it "would not have accepted the negotiated plea agreement" if it "believed that it was required to give credit for detention time." *Id.* at 7.

Second, the trial court suggested that it retained the discretion to deny credit for time spent at South Mountain under Section 9760. *Id.* at 6 (citing *Commonwealth v. Kyle*, 874 A.2d 12 (Pa. 2005); *Commonwealth v. Toland*, 995 A.2d 1242 (Pa. Super. 2010); *Commonwealth v. Fowler*, 930 A.2d 586 (Pa. Super. 2007); and *Commonwealth v. Conahan*, 589 A.2d 1107 (Pa. Super. 1991)). Further, the court concluded that Appellant was not entitled to credit for time spent at South Mountain because "the charges were originally brought under the Juvenile Act and were subject to the provisions of the Juvenile Act until Appellant waived his charges to the adult criminal system." *Id.* at 5. Consequently, the court determined "when a juvenile is in

detention, it is not pursuant to 'criminal charges,' but rather a juvenile petition alleging delinquent conduct." ***Id.***

Appellant presents the following question for review:

> Is not [Appellant] entitled as a matter of right to the award of sentencing credit under 42 Pa.C.S. § 9760(1) for time spent at custody in a secure juvenile detention facility after his arrest and prior to his transfer to adult court pursuant to 42 Pa.C.S. § 6355?

Appellant's Brief at 5. Appellant presents two arguments in support of his claim. We address each argument in turn.

First, Appellant argues that the trial court mischaracterized his request for credit as a challenge to the discretionary aspects of the sentence. ***Id.*** at 14. Appellant asserts that the plea agreement did not waive his right to seek credit for time served and argues the trial court erred by referencing his negotiated sentence. ***Id.*** at 31.

The Commonwealth does not directly respond to Appellant's argument that his challenge should not be regarded as a challenge to the discretionary aspects of the sentence. However, the Commonwealth reiterates that it opposed Appellant's request for credit for time spent at South Mountain because during plea negotiations, it only considered Appellant's eligibility for credit for time served in county prison. Commonwealth's Brief at 6. The Commonwealth further notes:

> Due to [Appellant's] negotiated plea agreement, [Appellant] was only sentenced to a term of 15 to 30 months of incarceration and a fine of only 550 dollars. The sentence is below the mitigated range of 18 months and it is far below the maximum penalty of

22 years of incarceration. The sentence is appropriate under Pennsylvania's sentencing code.

*Id.*

At the outset, we conclude that the trial court's analysis of Appellant's claim for sentencing credit as a challenge to the discretionary aspects of the sentence is misplaced. Instead, it is well settled that "[a] challenge to the trial court's failure to award credit for time spent at custody prior to sentencing involves the legality of sentence[.]"[4] *Commonwealth v. Fowler*, 930 A.2d 586, 595 (Pa. Super. 2007) (citation and quotation marks omitted).

We note, however, that a defendant may waive his statutory right to sentencing credit. *See Commonwealth v. Byrne*, 833 A.2d 729, 734 (Pa. Super. 2003). In *Byrne*, the defendant acknowledged in his plea agreement that he would only receive credit for time served for a period of one year and that he was waiving all other time served in prison against a negotiated sentence of ten to twenty years' imprisonment.[5] *Id.* at 731. The defendant

---

[4] Indeed, because Appellant negotiated the length of his sentence, there is no basis for this Court to consider a challenge to the discretionary aspects of the length of the sentence imposed. *See Commonwealth v. Brown*, 982 A.2d 1017, 1019 (Pa. Super. 2009) (noting that "where a defendant pleads guilty pursuant to a plea agreement specifying particular penalties, the defendant may not seek a discretionary appeal relating to those agreed-upon penalties" (citation omitted)).

[5] As noted in *Byrne*, the written plea colloquy contained eight paragraphs relating to the defendant's waiver of his right to credit for time served, and the trial court conducted an oral colloquy on the same issue. *See Byrne*, 833 A.2d at 731-32. We add that *Byrne* did not decide the issue of credit based

did not take a direct appeal, but filed a Post Conviction Relief Act[6] (PCRA) petition asserting that he was entitled to all time he served in prison under 42 Pa.C.S. § 9760(2).

The **Byrne** Court affirmed the PCRA court's dismissal of the claim. Of relevance to this appeal, this Court recognized that the defendant had a statutory right to credit for time served in prison and that his claim went to the legality of his sentence. **See id.** at 734-35. Nevertheless, this Court concluded that the defendant expressly acquiesced and agreed to the one year's credit and thus waived credit for the remainder of the time spent in pretrial custody. **Id.** at 734. The **Byrne** Court observed that it "would undermine the designs and goals of plea bargaining, and would make a sham of the negotiated plea process" if the defendant were to avoid "a specific term negotiated as part" of his plea. **Id.** at 735 (citations omitted).

In contrast to **Byrne**, the record here established that Appellant made his intent to seek credit for time served at South Mountain clear. **See** N.T., Plea & Sentencing Hr'g at 10. The Commonwealth did not seek to modify its offer, believing that Appellant's request would be denied. **See id.** Consequently, no specific term of the plea agreement prohibited Appellant

---

on the length of the negotiated sentence. **See generally Brown**, 982 A.2d at 1019.

[6] 42 Pa.C.S. §§ 9541-9546.

from seeking credit or suggested that Appellant knowingly waived his claim. *See Byrne*, 833 A.2d at 731.

Under these circumstances, we agree with Appellant that the references to the negotiated sentence by the trial court and the Commonwealth are not relevant to the legal question of Appellant's time credit request for time spent at a juvenile detention facility. *See id.* at 734. Moreover, in the absence of a specific term regarding credit, the integrity of the plea negotiation process is not jeopardized by Appellant's claim for relief. *See Brown*, 982 A.2d at 1019; *Byrne*, 833 A.2d at 735. Accordingly, we decline to consider Appellant's issue as a challenge to the discretionary aspects of sentencing claim.[7] *See Fowler*, 930 A.2d at 595.

Second, Appellant argues that the trial court misapplied Section 9760 when denying his request for credit for time spent at South Mountain. By way of a brief summary, Appellant asserts that this is a case of first impression in Pennsylvania, but that the rules of statutory construction and case law support his claim for relief. *See* Appellant's Brief at 12, 22-24. The Commonwealth responds that Appellant is seeking an unwarranted expansion of Section 9760 to include juvenile detention facilities. *See* Commonwealth's Brief at 7, 9, 11. We expand on Appellant's and the Commonwealth's arguments below.

As noted above, the issue regarding credit for time served involves the legality of sentence. *Fowler*, 930 A.2d at 595. Because the legality of a

---

[7] We discuss below whether the credit was discretionary in further detail.

sentence raises questions of law, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Gibbs***, 181 A.3d 1165, 1166 (Pa. Super. 2018); ***accord Kyle***, 874 A.2d at 17.

Moreover, the question of credit raises issues of statutory construction. ***See Kyle***, 874 A.2d at 17. "The object of any judicial exercise in statutory interpretation is to ascertain and effectuate legislative intent. When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." ***Commonwealth v. Cullen-Doyle***, 164 A.3d 1239, 1242 (Pa. 2017) (citation and quotation marks omitted).

Section 9760(1) provides:

> Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1).

Section 9760(1) contains two general elements: (1) the time must be "spent in custody" and (2) the time must be "as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based." ***See*** 42 Pa.C.S. § 9760(1). If both conditions are met, then the defendant is entitled to credit as of right. ***See Commonwealth v. Menezes***, 871 A.2d 204, 209 (Pa. Super. 2005) ("Pennsylvania law generally interprets the term 'shall' in legislative enactments to declare a mandatory duty.").

- 10 -

As to the "in custody" requirement, Appellant asserts that "'custody' and 'imprisonment' are almost synonymous, but that 'imprisonment' can include time spent in an institutional setting other than an actual jail or penitentiary." Appellant's Brief at 14 (citing, in part, **Kyle** and **Commonwealth v. Conahan**, 589 A.2d 1107 (Pa. 1991)). Appellant emphasizes that Pennsylvania courts have found that a defendant's placement at a community corrections center, a "restrictive drug/alcohol rehabilitative facility," and a "forensic mental health hospital" constituted "custody" for the purpose of Section 9760(1). **Id.** at 15-17.[8] Appellant concludes that his placement at South Mountain satisfied the "in custody" requirement of Section 9760(1) because

> [his] forced detention at the South Mountain secure juvenile facility had many more trappings of a prison than the community corrections center and a rehabilitation facility. In effect, [he] was housed in a "juvenile prison." Accordingly, it is clear that forced detention at a secure juvenile facility like South Mountain (Abraxas) is embraced by the expanded definition of the term reflected in the Pennsylvania jurisprudence.

**Id.** at 24-25.

The Commonwealth responds that Section 9760 "does not define the term custody as meaning time spent in a juvenile facility." Commonwealth's

---

[8] In support of these propositions, Appellant cites **McMillian v. Pennsylvania Bd. of Probation and Parole**, 824 A.2d 350 (Pa. Cmwlth. 2003) (discussing a community corrections center), **Commonwealth v. Cozzone**, 593 A.2d 860 (Pa. Super. 1991) (discussing rehabilitation facility), and **Commonwealth v. Jones**, 236 A.2d 834 (Pa. Super. 1967) (discussing a defendant's commitment to a state hospital).

Brief at 8. The Commonwealth further argues that the Pennsylvania Supreme Court has "adhered to strict statutory construction in determining the meaning of custody as time spent in prison." *Id.* at 10 (citing *Kyle*, 874 A.2d at 16-18).

In *Jones*, this Court held that time spent at a state hospital constituted time "in custody." *Jones*, 236 A.2d at 836. We reasoned that "'[c]ustody', in criminal law, is the same thing as detention, in civil law, and is synonymous with 'imprisonment'. 'Imprisonment' is the detention of a person contrary to his will."[9] *Id.* (citation omitted). In *Commonwealth v. Usher*, 399 A.2d 1129 (Pa. Super. 1979) (*per curiam*), the defendant spent nearly six months at "Abraxas"[10] during his probation and was later sentenced to one-and-a-half

_____

[9] *Jones* applied the former 19 P.S. § 898, a predecessor of Section 9760. The *Jones* Court noted that since 1937, the General Assembly has used the term "custody" when computing the run date of a sentence or the amount of credit. *See Jones*, 236 A.2d at 835 (discussing 19 P.S. § 894 ("[A]ll sentences for criminal offenses of persons who at the time sentence is imposed are held in custody in default of bail, Or otherwise, shall begin to run and be computed from the date of commitment for the offense for which said sentence shall be imposed[.]") and 19 P.S. § 898 ("Any person who has been convicted of an offense in any court in this Commonwealth and sentenced to a term of imprisonment shall be given credit toward the service of his sentence for any days spent In custody on this offense prior to the imposition of his sentence, including any days spent in custody on this offense prior to the entry of bail.")).

[10] The *Usher* Court also applied former Section 898. We note that the Court described "Abraxas" and the facility at issue in that case as follows:

> Abraxas Foundation, Inc. is a non-profit organization operating a comprehensive residential treatment program as an alternative to incarceration for youthful offenders, with a grant from the

to five years' imprisonment for probation violations.  *Id.*  The *Usher* Court

relied on *Jones* to conclude that the defendant was entitled to credit for time

---

Pennsylvania Governor's Council on Drug and Alcohol Abuse. However, its principal source of income is received from the county or juvenile court which refers subjects to it.

Act 63, passed June, 1972, gave sentencing courts several options for the treatment and rehabilitation of first offenders in drug and alcohol related cases. Its intent was to keep youthful offenders out of the penal system and, instead, involve them in viable treatment programs. Its facility known as Abraxas I, where [the defendant] was required to go as a condition of probation, is located six miles North of Marienville, Pennsylvania, on a fifty acre tract of land completely surrounded by the Allegheny National Forest and accessible only by dirt roads six miles into the forest from the nearest village.

Security measures to prevent its subjects from walking away consist of a "head count" made regularly on a 24 hour a day basis plus a program arrangement which compels each resident to be in a given place at a given time. The "head counts" occur at least every hour, and at times, more frequently. There are no armed guards but the isolation is such that it discourages walking away. However, if such occurs, the attendants make a search of the area, then notify the local police and the probation office, parole office or court which has jurisdiction over the person. Sometimes, search warrants are secured and the person arrested.

On discharge, the person's probation officer is notified to arrange transportation back to the sentencing county and occasionally the person is housed in the local county jail or hospital until that can be arranged.

During the period a person is at the facility, he is supplied with all necessities except clothing which his family must provide. These expenses are paid from state or federal funds.

*Usher*, 399 A.2d at 1129-30.  The Abraxas facility in *Usher* does not appear to be the same as South Mountain.

spent in "a comprehensive residential treatment program as an alternative to incarceration for youthful offenders." **Usher**, 399 A.2d at 1129.

In contrast, in **Kyle**, the Pennsylvania Supreme Court addressed whether a defendant was entitled to credit for time spent on bail release under electronic monitoring. **See Kyle**, 874 A.2d at 17. The **Kyle** Court initially noted that while "custody" was not defined by statute, "[c]ourts have interpreted the word 'custody,' as used in Section 9760, to mean time spent in an **institutional** setting such as, at a minimum, an inpatient alcohol treatment facility." **Id.** at 18 (citations omitted) (emphasis added).

Following an extensive review of the case law, the **Kyle** Court held "that time spent on bail release, subject to electronic monitoring, does not qualify as custody for purposes of Section 9760 credit against a sentence of incarceration." **Id.** at 20. The Court reasoned that "[r]elease on any form of bail necessarily restricts one's liberty, but release to one's home on bail subject to electronic monitoring does not reach the level of restriction that necessarily attends placement in an institutional setting."[11] **Id.** at 22.

_____

[11] The **Kyle** Court also specifically rejected a "case-by-case test for determining whether a person on an electronic monitoring program has spent time in Section 9760 custody, which would require the examination of the extent of control exercised by those in authority in the program." **Kyle**, 874 A.2d at 19-20. According to the Court, the implementation of a bright-line rule "obviate[s] the necessity of evidentiary hearings into the particulars of each electronic monitoring program around the Commonwealth" and "also has the salutary benefit of avoiding inconsistent results in these matters, based on perceived nuances in various programs across the Commonwealth." **Id.** at 22.

Following our review, there is little apparent dispute that the time spent at South Mountain constitutes an institutional setting with conditions at least as restrictive as an inpatient rehabilitative facility.[12]  The Pennsylvania Supreme Court has recognized that the term "in custody" may mean time spent in an institutional setting short of prison.  *See id.* at 18.  This Court has also previously concluded that time spent at an institutional "youthful offender" facility constituted "custody" within the meaning of a predecessor statute of Section 9760(1).  *See Usher*, 399 A.2d at 1129.

Nevertheless, Appellant's counsel only described the conditions of Appellant's time at South Mountain during argument and in post-sentence motions.  *See* N.T. Guilty Plea & Sentencing Hr'g at 9; Post-Sentence Mot., 5/30/17, ¶ 8.  Although the Commonwealth and the trial court have not disputed the veracity of counsel's descriptions, the trial court did not make the specific findings of fact necessary to determine whether the time Appellant spent at South Mountain was "in custody."  Because this Court is not a finder of fact, it is necessary to have the trial court place on the record its findings

---

[12] Although not discussed by the parties, we note that the Juvenile Act contains numerous provisions minimizing or prohibiting the time a juvenile is exposed to adult "lockup" or "jail."  *See* 42 Pa.C.S. §§ 6326(b), (c); 6327(c); *accord In re J.M.*, 42 A.3d 348, 349-55 (Pa. Super. 2012) (holding that a juvenile may not be incarcerated in an adult facility for a probation violation).  The comment to Section 6327 suggests that the provisions limiting the place of detention are "designed to avoid the harm resulting from exposing children to adult criminals and the degrading effect of jails, lockups, and the like."  42 Pa.C.S. § 6327 cmt.  However, the comment also states "[t]he limitations imposed upon the place of detention reflect that this is custodial detention prior to adjudication of delinquency . . . ."  42 Pa.C.S. § 6327 cmt.

regarding the nature of the facility, the degree of supervision under which Appellant was subject, and the degree of liberty he may have enjoyed while at South Mountain. **Cf. Usher**, 399 A.2d at 1129-30.

To determine whether a remand is necessary, we next consider whether Appellant met the second element of Section 9760(1)—that the time served be "as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based." **See** 42 Pa.C.S. § 9760(1). Additionally, we must address the Commonwealth's and the trial court's contention that credit under the circumstances of this case is discretionary rather than mandatory.

As to the second element of Section 9760(1), Appellant contends that the trial court erred in focusing on whether the time he spent at South Mountain was "a result of a criminal charge." Appellant's Brief at 25. Specifically, Appellant asserts that the trial court improperly focused on the fact that Appellant was held at South Mountain based under the Juvenile Act until he waived the matter to the criminal system. **See id.** In support, Appellant argues that the trial court's "overly mechanistic definition" of the term "criminal charge" was not warranted, noting that both the filing of a criminal complaint and a written allegation of juvenile delinquency use "highly similar language in describing the entirety of the charging function" in terms of alleged "offenses." **Id.** at 26. Alternatively, Appellant contends that the trial court contravened settled principles of statutory interpretation by failing

to consider whether the time he spent at South Mountain was "as a result of conduct on which such a charge is based." *Id.* at 25-26.

The Commonwealth's response mirrors that of the trial court. The Commonwealth asserts that Appellant "should not be entitled to pre-sentencing time spent in [South Mountain] because he was under control of the Juvenile Act." Commonwealth's Brief at 7. In support, the Commonwealth cites ***Commonwealth v. Hollawell***, 604 A.2d 723 (Pa. Super. 1992) for the proposition that "time credit should not be given unless the defendant is in custody due to criminal charges." *Id.* at 7-8. The Commonwealth concludes that "[w]hen a juvenile is held in a detention facility, it is not pursuant to criminal charges, but rather a juvenile petition alleging delinquent conduct." *Id.* at 7.

As noted above, Section 9760 requires that the trial court grant credit for "all time spent in custody **as a result of the criminal charge** for which a prison sentence is imposed **or as a result of the conduct on which such a charge is based**." ***See*** 42 Pa.C.S. § 9760(1) (emphases added). This Court must interpret "or" in "its normal disjunctive meaning" unless such an interpretation would produce an absurd result. ***Commonwealth v. Pilchesky***, 151 A.3d 1094, 1098 (Pa. Super. 2016), *appeal denied*, 174 A.3d 1028 (Pa. 2017) (citations omitted).

Here, the time Appellant spent in South Mountain was directly related to his possession and discharge of a stolen firearm. This conduct formed the basis for the criminal charges to which Appellant ultimately pled guilty, namely

receiving stolen property, possessing a firearm without a license, possession of a firearm by a minor. Although the charges were initially brought under the Juvenile Act, they resulted in criminal charges for which sentence was imposed. Thus, Section 9760(1) applies, and Appellant's time at South Mountain was "as a result of the conduct on which his criminal charges were based."[13] *See Cullen-Doyle*, 164 A.3d at 1242 ("When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent."). Therefore, we agree with Appellant that the trial court's focus on the fact that Appellant was being held pursuant to a juvenile proceeding and not "criminal charges" when at South Mountain was too narrow under Section 9760(1).

Lastly, we consider whether the trial court retained the discretion to deny Appellant's time credit request for time spent at South Mountain. *See* Trial Ct. Op. at 6. Appellant argues that the instances in which the trial court retains discretion to deny a request for credit is limited to when a defendant voluntarily admits himself to a rehabilitative facility before trial. Appellant's Brief at 18.

The Pennsylvania Supreme Court has recognized that credit may be awarded in the trial court's discretion. In *Conahan*, a defendant voluntarily admitted himself into a rehabilitation facility following his arrest for driving

---

[13] We find the Commonwealth's reliance on *Hollawell* to be misplaced as that case stands for the proposition that a defendant is not entitled to have time spent in custody "double counted" on separate offenses.

under the influence. *Conahan*, 589 A.2d at 1108. The trial court sentenced the defendant to the mandatory minimum thirty-day sentence under former section 3731(e), awarded the defendant credit for his "custodial treatment," and immediately paroled the defendant. *Id.* The trial court specifically concluded that the defendant's time in a "restrictive treatment facility" constituted "imprisonment" within the meaning of former section 3731(e). *Id.*

The *Conahan* Court affirmed the trial court's ruling. Specifically, the Court determined that the definition of "imprisonment" and "custody" included more than involuntary confinement in prison. *Id.* at 1109. The Court concluded "successful completion of this custodial inpatient rehabilitation . . . falls within the common meaning of 'imprisonment' and is a sufficient 'institutional setting' as contemplated by this Court in [*Commonwealth v. Kriston*, 588 A.2d 898 (Pa. 1991)[14]]." *Id.* The Court, however, emphasized that the defendant was not entitled to credit as a matter of law:

> Clearly, our acceptance of this type of inpatient "institutional rehabilitation" in no way **entitles** one accused of driving under the influence of alcohol to a credit for such rehabilitative commitment **as of right**. Rather, it is only an express approval of credits for such commitment that the sentencing court in its discretion deems to be sufficient. Accordingly, we hold that the trial court properly sentenced [the defendant] to the mandatory minimum term of imprisonment, and then acted well within its discretion in awarding [the defendant] a credit of thirty days for time served in inpatient institutional rehabilitation and in granting him immediate parole.

---

[14] We note that *Kriston* involved a case involving house arrest. *See Kyle*, 874 A.2d at 17.

*Id.* at 1110 (emphases in original).

Subsequently, in **Cozzone**, the defendant was admitted to an alcohol treatment facility as a condition of bail. **Cozzone**, 593 A.2d at 866. The trial court denied his request for credit, and in the ensuing appeal, this Court concluded that Appellant was entitled to credit for the time spent at the treatment facility. Specifically, this Court relied on **Conahan** to reject the Commonwealth's argument that "an alcohol rehabilitation program" lacked traditional aspects of confinement. *Id.* at 866. However, the **Cozzone** Court noted the defendant before that Court "did not voluntarily admit himself to an alcohol treatment facility, but entered the rehabilitation facility as a condition of bail in order to avoid pre-trial imprisonment." *Id.* at 867. Accordingly, the Court concluded that the defendant was "**entitled** to credit." *Id.* at 868 (emphasis added).

In **Toland**, this Court summarized the interaction of **Conahan** and **Cozzone** as follows:

> Looking at these cases together, therefore, it seems that whether a defendant is entitled to credit for time spent in an inpatient drug or alcohol rehabilitation facility turns on the question of voluntariness. If a defendant is ordered into inpatient treatment by the court, *e.g.*, as an express condition of pre-trial bail, then he is entitled to credit for that time against his sentence. By contrast, if a defendant chooses to voluntarily commit himself to inpatient rehabilitation, then whether to approve credit for such commitment is a matter within the sound discretion of the court.

***Toland***, 995 A.2d at 1250-51 (citation omitted). Therefore, the issue of voluntariness and choice are factors in determining whether credit is appropriate or is required. ***See id.***

Instantly, Appellant had no choice in his detention as a juvenile and before his transfer to criminal court. ***See*** Trial Ct. Op. at 1 (indicating that Appellant "remained securely detained at South Mountain" following a detention hearing); ***see also*** 42 Pa.C.S. §§ 6326(a).[15] Thus, we agree with

_____

[15] Section 6326 states, in relevant part:

> A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall:
>
> > (1) notify the parent, guardian or other custodian of the apprehension of the child and his whereabouts;
> >
> > (2) release the child to his parents, guardian, or other custodian upon their promise to bring the child before the court when requested by the court, unless his detention or shelter care is warranted or required under section 6325 (relating to detention of child); or
> >
> > (3) **bring the child before the court or deliver him to a detention or shelter care facility designated by the court** or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give written notice, together with a statement of the reason for taking the child into custody, to a parent, guardian, or other custodian and to the court.

42 Pa.C.S. § 6326(a)(1)-(3) (emphasis added). Section 6325 further provides:

> A child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless his detention or care is required to protect the person or property of others or of the child or because the child may abscond or be removed from

Appellant that the trial court erred in concluding that its determination of credit was discretionary. To the contrary, because Appellant's involuntary detention directly related to the criminal charges for which a sentence was imposed, the statutory language that "credit . . . shall be given" would divest the trial court of any discretion to deny Appellant's request for credit so long as Appellant was in fact "in custody." **See Toland**, 995 A.2d at 1250-51; **see also Menezes**, 871 A.2d at 209. ("Pennsylvania law generally interprets the term 'shall' in legislative enactments to declare a mandatory duty.").

In sum, we conclude that the trial court must make further factual findings regarding the nature of the facility at South Mountain and the conditions of Appellant's detention to determine whether Appellant was "in custody" for the purposes of Section 9760(1). If the trial court finds Appellant was "in custody," then both elements of Section 9760(1) have been met, and Appellant will be entitled to credit for time served. In that event, the trial court may correct its sentence to include credit.

Accordingly, we remand this matter for reconsideration of Appellant's request for credit. The trial court may convene a hearing at which the parties

---

the jurisdiction of the court or because he has no parent, guardian, or custodian or other person able to provide supervision and care for him and return him to the court when required, or an order for his detention or shelter care has been made by the court pursuant to this chapter.

42 Pa.C.S. § 6325.

may present any additional evidence regarding the nature of the South Mountain facility and the restraint placed on juveniles awaiting adjudication or transfer.

Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2018</u>